UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ESSEX INSURANCE COMPANY, : |  |
|     Plaintiff, : |  |
| : |  |
| v. : | C.A. No. 13-432ML |
| : |  |
| GILBERT ENTERPRISES, INC., d/b/a : |  |
| CLUB FANTASIES, et al., : |  |
|     Defendants. : |  |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

    This declaratory judgment action was filed by Essex Insurance Company ("Essex") against its insured Gilbert Enterprises, Inc., d/b/a Club Fantasies ("Gilbert") and certain state tort plaintiffs and defendants[1] in connection with its obligations under a commercial general liability insurance policy arising from a tragic automobile accident following the alleged negligent service of alcohol at Club Fantasies.  Essex seeks a declaration of noncoverage based on the policy exclusion for liquor liability, as well as a declaration that it is not obligated to defend or indemnify Gilbert or any of the other plaintiffs or defendants against claims arising out of the underlying state tort action.

    Before this Court for report and recommendation is Gilbert's Motion to Stay this Declaratory Judgment Action pursuant to the Wilton/Brillhart Abstention Doctrine (ECF No. 10).  Based on the finding that the exercise of federal jurisdiction over this declaratory judgment

---

[1] The state tort action is captioned <u>Daniel Martinez, individually and as the Administrator of the Estate of Joel Martinez, Ninoska Disla as Mother and Natural Guardian of Joel Martinez, Remy Minaya and Alvin Tejeda v. Gilbert Enterprises, Inc., d/b/a Club Fantasies, Elvis Cruz, and Paula Cruz</u>, Civil No. PC13-1927.  It is pending in the Providence County Superior Court ("underlying state tort action").  The defendants in this case include all of the parties – both plaintiffs and defendants – in the underlying state tort action.

1

action will promote practicality and wise judicial administration, I recommend that this Court deny Gilbert's Motion to Stay.

## I. Factual and Procedural Background

Gilbert is the owner/operator of the "Club Fantasies" night club in Providence, Rhode Island. Essex, an approved surplus lines insurer in the State of Rhode Island, issued a commercial general liability policy ("the Essex Policy") to Gilbert for the relevant time period. The policy contains an exclusion for coverage of bodily injury or property damage based on "causing or contributing to the intoxication of a person," or "[a]ny statute, ordinance or regulation relating to the sale, gift, distribution, or use of alcoholic beverages." An endorsement applicable to "Restaurant, Bar, Tavern, Night Clubs, Fraternal and Social Clubs" contains the same exclusion, and an exclusion for any act or omission by the insured or any of its employees, patrons or other persons for failing to prevent a person suspected to be under the influence of alcohol from driving.

Gilbert procured the Essex Policy through Rhode Island-based Affiliated Insurance Managers, Inc. ("Affiliated"). Affiliated was Gilbert's agent for purposes of obtaining general liability insurance for its business, which included the service and sale of alcoholic beverages. Gilbert contends that Affiliated represented that it had obtained appropriate general liability insurance coverage and that neither Affiliated, nor Essex (apart from the language of the exclusions in the policy itself), advised it that the Essex Policy did not cover the negligent service of alcohol.

While the Essex Policy was in place, on April 29, 2010, defendants Elvis Cruz, Remy Minaya, Alvin Tejada and decedent Joel Martinez traveled from Lynn, Massachusetts, to patronize Club Fantasies. According to the complaint in the underlying state tort action, Cruz became visibly intoxicated at the night club. In the early morning hours of April 30, 2010, while

driving the group home on Interstate Route 95, he lost control of the vehicle, struck the left guard rail, veered across the highway and crashed through the right guard rail into the woods. Martinez was pronounced dead at the scene and the other passengers were injured. Cruz confessed to police that he had drunk vodka at Club Fantasies. A blood alcohol test showed that his blood alcohol when he left Club Fantasies would have been far greater than the legal limit. Cruz pled guilty to motor vehicle homicide and is currently serving a prison sentence.

Three actions have been filed as a result of this tragedy.

The first is the underlying state tort action. Filed on April 24, 2013, it is brought by the estate and guardian of the deceased passenger (Daniel Martinez and Ninoska Disla) and the two injured passengers (Remy Minaya and Alvin Tejada) against Gilbert, Cruz and Cruz's mother, who owned the vehicle. The complaint is based on the service of alcohol to Cruz at Club Fantasies while he was visibly intoxicated, causing and increasing his intoxication, and the failure of Club Fantasies to remove Cruz from the premises; the claims arise under the Rhode Island common law and the Rhode Island Liquor Liability Act (R.I. Gen. Laws §§ 3-14-1, 10-7-1 *et seq.*). The state tort action also asserts loss of consortium against Gilbert and negligence against Cruz and his mother.

After the state tort action was initiated, Gilbert submitted the claim to Essex, asking it to both defend and indemnify. Asserting its exclusions, Essex denied any duty to indemnify, but, mindful of the seriousness of the underlying tort action, agreed to provide Gilbert with a defense under a reservation of rights while it seeks a declaration that it has no duties – either to indemnify or defend – under the policy. Essex is paying for separate counsel to represent Gilbert in the state tort action. See Emp'rs Mut. Cas. Co. v. PIC Contractors Inc., 24 F. Supp. 2d 212,

215 (D.R.I. 1998) (under Rhode Island law, duty to defend is broader than duty to indemnify; it arises if factual allegations of complaint raise a reasonable possibility of coverage).

Consistent with Essex's goal of getting a swift determination of its obligations under the policy, it initiated the second action, this declaratory judgment action ("federal declaratory judgment action").  Filed by Essex on June 10, 2013, this suit joins as defendants all of the parties in the underlying state tort action, essentially every party that could have a claim against Essex arising from the accident.  Grounded in the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, it is a streamlined single-count request for a declaration that the exclusions to the Essex Policy bar recovery by any of the parties in the underlying state tort action, including its insured Gilbert.

In response, on July 16, 2013, Gilbert filed the third action, which it alleges is the "parallel proceeding" that is the foundation for this motion to stay ("state declaratory judgment action").  The only defendants are Essex and Affiliated, the insurance agent that placed the Essex Policy; the individual plaintiffs and defendants in the underlying state tort action are not joined. The gravamen of the claim is Affiliated's alleged failure to advise Gilbert that its general liability insurance policy excluded coverage for negligent service of alcohol – this factual allegation is grounded in claims of breach of contract, breach of good faith and fair dealing and breach of fiduciary duty.  Against Essex, Gilbert claims that it represented that it was providing general liability insurance yet failed to cover negligent service of alcohol, the coverage of greatest importance to Gilbert, and that it failed to advise Gilbert of the option of obtaining coverage for negligent service of alcohol or the risk of not having such coverage.[2]  The stay motion is based on the first count, which is a near mirror image of the federal declaratory judgment action: it

---

[2] At oral argument on this motion to stay, Gilbert's counsel noted that it will pursue discovery to see if there is a relationship between Essex and Affiliated such that Affiliate's representations may be attributed to Essex.

seeks a declaration under the Rhode Island Declaratory Judgment Act, R.I. Gen. Laws § 9-31-1, *et seq.*, that Essex is obligated to indemnify and defend under the policy.

All three cases are at an early phase – so far there has been no activity in either the state tort action or the state declaratory judgment action. At oral argument, Gilbert's counsel represented that he plans to consolidate the two state court actions for purposes of conducting unified discovery. If this occurs, the parties also represented that the consolidated matter would not likely be suitable for the Providence County Superior Court business calendar.

In support of its motion to stay, Gilbert argues that the state declaratory judgment action parallels the federal declaratory judgment action because it involves the same parties (Gilbert and Essex) and the same claim (a declaration of Essex's obligations to Gilbert under the Essex Policy), among others. Gilbert states that it initiated the state declaratory judgment action after Essex filed its federal declaratory judgment action because it wanted to sue Affiliated and Essex together in the same suit to facilitate discovery in hopes of making Essex responsible for the representations Gilbert claims were made by Affiliated. It now seeks to avoid the expense of piecemeal litigation of the issues pertaining to Essex, to which it will be exposed if the federal declaratory action is allowed to proceed. Gilbert says the state declaratory judgment action provides it with a single case where it can obtain complete relief on all claims related to its insurance coverage because Affiliated is not a party in the federal declaratory judgment action.

Essex's interest is in a swift declaration of the legal significance of the liquor liability exclusion to its duty to defend and indemnify Gilbert and the injured parties, particularly where it is paying to defend Gilbert while the interpretation of the Essex Policy remains undecided. It filed a streamlined declaratory judgment action in federal court against every person or entity who conceivably might assert a claim under the Essex Policy. With the underlying state tort

action clearly framing the nature of the claim as one involving the negligent service of alcohol, virtually no discovery[3] or fact finding will be required to present a motion for summary judgment in this Court for a ruling on the narrow issue of the interpretation and enforceability of the exclusion.

By contrast, the state declaratory judgment action does not provide Essex with an opportunity for complete relief because the individuals who are plaintiffs and defendants in the state tort action are not joined in the state declaratory judgment action. More importantly, although the state declaratory judgment action does have a count that asks the Superior Court to interpret its duties under the Essex Policy, it has other fact-dense claims that will require extensive discovery and fact finding. Gilbert's plan to seek to consolidate the two state court cases exacerbates Essex's fear that the state declaratory judgment action will be bogged down by discovery. While it is possible that the Superior Court would isolate the declaratory judgment count and expedite it for final disposition, Essex is far more confident of the likelihood of a swift and definitive determination of its duty to Gilbert and the individual litigants in federal court. It asks this Court to respect its selection of the federal forum.

II. **Legal Analysis**

A. **Wilton/Brillhart Abstention**

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). It is well established that a district court's decision whether or not to exercise jurisdiction over a request

---

[3] Essex represents that the only discovery it expects to need are responses to requests to admit that the state tort complaint frames the claims that are at issue. See Aetna Cas. & Sur. Co. v. Kelly, 889 F. Supp. 535, 542-43 (D.R.I. 1995) (duty to indemnify a pure question of law when not dependent on resolution of fact issues presented in the underlying litigation); Peerless Ins. Co. v. Viegas, 667 A.2d 785, 787 (R.I. 1995) (with limited exceptions, insurer's duty to defend is determined by pleadings test – "if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff").

for declaratory judgment is subject to the court's broad discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) (district court's decision about the propriety of hearing declaratory judgment actions is discretionary); Lichoulas v. City of Lowell, 555 F.3d 10, 13 n.3 (1st Cir. 2009) (listing cases) ("In general, declaratory and injunctive relief are both matters of judicial discretion."); Liberty Ins. Underwriters Inc. v. Pacia, No. 011-196-ML, 2011 WL 4527330, at *6 (D.R.I. Sept. 29, 2011) (district court decision to exercise jurisdiction subject to broad discretion); Hartford Fire Ins. Co. v. Gilbane Bldg. Co., No. 11-019-ML, 2011 WL 2457638, at *2 (D.R.I. June 16, 2011) (district court has "no compulsion" to exercise jurisdiction in a declaratory judgment action) (citation omitted). While generally a federal district court must exercise its jurisdiction over a claim unless there are "exceptional circumstances" for not doing so, Colorado River Water Conservation District v. United States, 424 U.S. 800, 813 (1976), in its seminal decision in Wilton, the Supreme Court held that, in a declaratory judgment action where a parallel state court proceeding exists, a forgiving, discretionary standard governs the district court's decision to stay or dismiss the action. 515 U.S. at 286-90; Standard Fire Ins. Co. v. Gordon, 376 F. Supp. 2d 218, 223 (D.R.I. 2005). The court's focus should be on whether it would be uneconomical as well as vexatious for the federal court to proceed with the declaratory judgment action when another suit is pending in a state court presenting the same issues between the same parties. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942). This is consistent with the Declaratory Judgment Act, which creates no compulsion for the federal court to exercise jurisdiction to provide the relief sought. Hartford Fire Ins. Co., 2011 WL 2457638, at *2.

As this Court recently noted, there is "no exclusive set of factors [that] guides a court's exercise of discretion." Id. Rather, the court "should consider 'the scope of the pending state

7

court proceeding and the nature of defenses open there.'" Id. (quoting Wilton, 515 U.S. at 283). Whether declaratory relief is appropriate in a particular case "will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." Id. (quoting Wilton, 515 U.S. at 287). At bottom, concerns of "practicality and wise judicial administration" must prevail in determining whether to exercise jurisdiction over a declaratory judgment action when a parallel action is pending in state court. Wilton, 515 U.S. at 288.

As a starting point to determine whether abstention under Wilton/Brillhart is appropriate, this Court, in the past, has employed the following five factors:

(1) whether the same parties are involved in both cases;

(2) whether the claims made in the declaratory judgment action can be adjudicated in the state court action;

(3) whether resolution of the declaratory judgment action turns on factual questions that will be litigated in the state court action;

(4) whether the issues presented are governed by state or federal law; and

(5) what effect the declaratory judgment action is likely to have on potential conflicts of interest between the insurer and the insured.

Liberty Ins. Underwriters Inc., 2011 WL 4527330, at *6; Hartford Fire Ins. Co., 2011 WL 2457638, at *2 n.2. These factors "should not be used as a mechanical checklist, but rather must be carefully balanced as they apply in a given case." Standard Fire Ins. Co., 376 F. Supp. 2d at 225. Nevertheless, they provide a useful framework for the analysis that informs the decision whether to exercise discretion to stay or to proceed with the federal declaratory judgment action.

Before breaking down the circumstances of this dispute into the five factors, it is useful to rehearse some of the considerations affecting "practicality and wise judicial administration" that undergird the Wilton/Brillhart abstention doctrine. Wilton, 515 U.S. at 288. This Court should


not proceed with the federal declaratory judgment action if doing so will result in piecemeal litigation, duplication of effort and the possibility of inconsistent results. OHI Asset (CT) Lender, LLC v. Woodland Manor Improvement Ass'n ex rel. Shine, 687 F. Supp. 2d 12, 21 (D.R.I. 2010) (quoting Emp'rs Mut. Cas. Co., 24 F. Supp. 2d at 215). On the other hand, in exercising its discretion, this Court should also be mindful of the important policy considerations implicated by an insurance company's declaratory judgment action – "[i]nsurers often need immediate guidance as to whether they have an ongoing obligation to defend: if they refuse, they may be in breach of contract or worse, and if they accede, they sometimes find they have prejudiced their position." Hartford Fire Ins. Co. v. R.I. Pub. Transit Auth., 233 F.3d 127, 132 (1st Cir. 2000). Rhode Island law echoes the value of a prompt declaratory ruling for an insurer so it can expediently obtain a determination of its duty to defend or indemnify its policyholder. Emp'rs Fire Ins. v. Beals, 240 A.2d 397, 401 (R.I. 1968), abrogated on other grounds by Peerless Ins. Co., 667 A.2d at 787.

Prompt resolution promotes wise judicial administration by clarifying the parties' duties to each other, which will also assist in attempts to settle or litigate the underlying tort suit against the insured. Standard Fire Ins., 376 F. Supp. 2d at 234 (citing Aetna Cas. & Sur. Co., 889 F. Supp. at 543). Thus, if the disclaimer of coverage rests on purely legal grounds so that a clear determination can quickly be obtained, it is appropriate for the federal declaratory judgment action to proceed. Emp'rs Mut. Cas. Co., 24 F. Supp. 2d at 217. On the other hand, coverage questions that turn either on factual issues also presented in the underlying state litigation or on novel state law issues are better addressed in the state action to avoid duplicative proceedings and the risk of inconsistent judgments. Id. (when duty to defend rests on legal interpretation of policy, federal jurisdiction retained for determination; when duty to indemnify turns on factual

issues, federal action dismissed); Liberty Ins. Underwriters Inc., 2011 WL 4527330, at *8 (scope of coverage duty owed to injured third parties where insurer and insured have settled presents "novel, unsettled, difficult, complex, or otherwise problematic" issue that weighs in favor of abstention).

    B.   **Wilton/Brillhart Analysis**

    Consideration of the first factor – the extent to which the same parties are in both cases – pulls this Court at once towards abstention and towards the exercise of jurisdiction. On one hand, the state declaratory judgment action is unquestionably a parallel state court lawsuit pending between the same parties. Standard Fire Ins. Co., 376 F. Supp. 2d at 226 (parallel does not mean perfect identity of parties and issues). Essex and Gilbert are parties in both. However, the other individuals to whom Essex might be liable are joined in the federal action, but not in the state declaratory judgment action. See Liberty Ins. Underwriters Inc., 2011 WL 4527330, at *8 (open question under Rhode Island law whether insured can waive coverage for injured third parties by post-occurrence settlement with insurer). Moreover, the state declaratory judgment action is complicated by its focus on the agent, Affiliated, which could open a Pandora's box of factual complexity that might or might not involve Essex, but that is unrelated to the crisp legal issue presented by the federal declaratory judgment action. But see Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 258 (4th Cir. 1996) (joinder of insurance agent seen as reason for federal court to abstain because all disputes between insured and insurer can be resolved in one case).

    Next, this Court should ascertain whether the questions in controversy between the parties to the federal suit "can better be settled in the proceeding pending in the state court." Brillhart, 316 U.S. at 495. Consideration of this factor tips somewhat toward retention of federal jurisdiction. While there is no question that the coverage dispute, an issue determined by application of Rhode Island law, can satisfactorily be adjudicated in the state declaratory

judgment action, where the court is well able to interpret the Essex Policy, a declaration in the state declaratory judgment action would leave Essex exposed to potential claims by the injured parties in the underlying state tort action.  See United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998); Emp'rs Mut. Cas. Co., 24 F. Supp. 2d at 217.  Moreover, a determination of Essex's obligations may be slow in coming in the state court where there are factual issues unrelated to the core question of coverage that may divert the court from addressing the interpretation of the policy exclusion.  Emp'rs Mut. Cas. Co., 24 F. Supp. 2d at 217 (district court decides simple legal issue of duty to defend, but abstains from deciding fact/law issue of duty to indemnify).  Even if the Rhode Island Superior Court were to quickly decide a motion for summary judgment focused singularly on the interpretation of the policy, an interlocutory appeal may not be authorized, leaving Essex without a final judgment until the other claims are also resolved (perhaps by a trial).  Furtado v. Laferriere, 839 A.2d 533, 537 (R.I. 2004) (grant of summary judgment not final and appealable until court enters judgment on a separate document); see also R.I. Super. Ct. R. Civ. P. 58(b) (separate and final judgment enters only if court expressly determines there is no just reason for delay).  This likelihood would expose Essex to continuing prejudice arising from ambiguity over its ongoing duty to defend.  Also material is that the state law issue implicated in this insurance coverage question is simple and straightforward; it is "not the kind of 'novel, unsettled, difficult, complex, or otherwise problematic' issue that would weigh in favor of abstention."  Hartford Fire Ins. Co., 2011 WL 2457638, at *3 (quoting Standard Fire Ins. Co., 376 F. Supp. 2d at 231).

     Balanced against these considerations is Gilbert's desire to avoid piecemeal litigation, including its preference to litigate all of its claims against Essex in a single case.  If this Court decides the insurance coverage dispute between Essex and Gilbert, Gilbert's factually-dense

claims for breach of contract and of the covenant of good faith and fair dealing against both Affiliated and Essex[4] will continue to be litigated in the state court.  While Essex can get a determination as to all potential claimants against the policy only in the federal court suit, Gilbert can get a determination as to all of its claims against Essex and Affiliated only in the state court suit.[5]  However, where discovery has not begun in the state court and the insurance coverage issue presents a discrete question that will require the same resources whether it is decided in the state or federal court, Essex's interest in a prompt final decision tips the balance[6] in favor of the exercise of jurisdiction here.  Indeed, efficiency augers strongly in favor of a prompt and final decision on the narrow issue of the interpretation of the policy because it is a threshold question the resolution of which could eliminate the dispute between Affiliated, Essex and Gilbert about representations made about the Essex Policy.  If not, once the meaning of the insurance policy is

---

[4] Gilbert's claims against Affiliated and Essex for breach of contract, fiduciary duty and of the covenant of good faith and fair dealing are completely different from the count seeking a declaration as to the meaning of the Essex Policy.  These claims are not only factually based but also intertwined because Gilbert is attempting to establish that, despite the language of the policy excluding coverage for negligent service of alcohol, it relied on representations made by Affiliated, and Essex has a relationship to Affiliated, such that Gilbert must be provided the benefits of coverage.  Gilbert's fear of piecemeal litigation and inconsistent results is well-founded with respect to these claims, though not with respect to the coverage issue based on the pure language of the Essex Policy.

[5] It is worth noting that Gilbert could have brought its claims against Essex and Affiliated in the federal declaratory judgment action.  In addition to a counterclaim against Essex, Fed. R. Civ. P. 13, it could have impleaded Affiliated pursuant to 28 U.S.C. § 1367, which does not require diversity.  See Legion Ins. Co. v. Family Serv., Inc., 561 F. Supp. 2d 232, 238 (D.R.I. 2008) (court has discretion to permit defendant to implead non-diverse third party when plaintiff insurer brought declaratory judgment action).

[6] This Court is mindful that Essex has the status of first filer.  While which party is first-to-file is not a significant consideration in exercising Wilton/Brillhart discretion, it is worth some consideration when the other factors do not tip strongly in either direction.  See TIG Ins. Co. v. Fairchild Corp., No. 07-CIV-8250, 2008 WL 2198087, at *4 (S.D.N.Y. May 27, 2008) ("there can be no mechanistic accrual of rights that attaches by reason of reaching the courthouse first, or indeed of engaging in a race at all"); Lexington Ins. Co. v. Rolison, 434 F. Supp. 2d 1228, 1244 (S.D. Ala. 2006) (which suit filed first weighed "in the broader context of the ends of justice"); cf. OHI Asset (CT) Lender, LLC, 687 F. Supp. 2d at 18 (parallel proceedings are only those already pending when federal action is filed).

decided, Essex and Gilbert (together with Affiliated) can litigate their factual contract dispute in the state court.[7]

The final factor – the potential for conflicts between insurer and insured – is not at play in this case. Gilbert acknowledges that Essex's decision to provide it a defense until the duty to do so is declared by a court eliminates the specter of any conflict of interest.

### III.  Conclusion

Whether to abstain in this case presents an exquisitely close question. After consideration of all of the Wilton/Brillhart factors, I find that concerns of "practicality and wise judicial administration" are better served by a prompt and final decision by this Court regarding the insurance coverage issue. Accordingly, I recommend that this Court DENY Gilbert's Motion to Stay and retain federal jurisdiction over this declaratory judgment action. ECF No. 10.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days after the date of service. See Fed. R. Civ. P. 72(b). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 3, 2013

---

[7] If Gilbert counterclaims in the federal declaratory judgment action, raising the factually-based claims asserted against Essex in the state court, this Court can dismiss those claims without prejudice since they are already pending in state court – and better resolved there where Affiliated is a party – once the question of law regarding the interpretation of the Essex Policy is determined.